UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **LAPIDUS LAW FIRM PLLC,**<br><br>**Plaintiff,**<br><br>v.<br><br>**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY,**<br><br>**Defendant.** | **Civil No. 20-161 (JDB)** |

**MEMORANDUM OPINION**

Plaintiff Lapidus Law Firm PLLC ("the Firm") filed this action against defendant Washington Metropolitan Area Transit Authority ("WMATA") in January 2020, seeking under WMATA's Public Access to Records Policy ("PARP") documents relating to an October 2018 Metro Access van crash. Now before the Court are the parties' cross-motions for summary judgment. For the reasons explained below, the Court concludes that the Firm's request was proper and that WMATA cannot, under PARP, decline to release the requested records merely because a claim for loss is pending. The Court will therefore require WMATA to reconsider the Firm's request and either produce the responsive records or identify an applicable exemption that prevents it from disclosing the records.

**Background**

On October 1, 2018, a Metro Access van was involved in an accident on Interstate 270. See Decl. of James Hamilton ("Hamilton Decl.") [ECF No. 7-4] ¶¶ 2–3; Ex. 2, Decl. of Barbara Richardson ("Richardson Decl.") [ECF No. 7-3] at 1. Mariam Hendricks, a disabled adult and a passenger on the van, was injured in the accident. Ex. 2, Richardson Decl. at 1–2. Her parents, Minnis and Ann Hendricks, hired the Firm to represent them in PARP proceedings. Id. at 1.

1

Shortly after the accident, on October 8, 2018, the Firm sent a letter to WMATA, citing PARP and requesting documents relating to the incident, including (1) copies of the incident/accident reports; (2) supervisor reports; (3) "[a]ny and all visual evidence including but not limited to Dive Cam/CCTV/Photographic Evidence"; (4) investigatory documents; and (5) cost repair estimates of the MetroAccess Van. Id. Attached to that letter was an affidavit from Minnis and Ann, "authoriz[ing]" WMATA to provide the requested documents to the Firm. Id. at 2. Ann signed the affidavit "as Mother and Guardian of Mariam Hendricks, a Disabled Adult." Id.

The next day, October 9, 2018, WMATA responded to the Firm's letter via an email, which read: "WMATA's Third Party Claims Office is currently processing the attached claim, and therefore, your request for related records is being forwarded to that office. Thus, we are referring this request to April Rice, Claims Adjuster in WMATA's Third Party Claims Office, who is handling the claim."[1] Ex. 3, Richardson Decl. at 1. WMATA went on to advise the Firm to "direct correspondence regarding this request to Ms. Rice." Id.

About ten months later, on August 21, 2019, the Firm sent WMATA an email stating that the Firm had "submitted a PARP request during October of last year relating to a collision which injured our client while riding a Metro Access Van. We have yet to receive a response from WMATA and have attached the PARP request we previously sent." Ex. 4, Richardson Decl. at 1. Later that day, WMATA responded, noting "according to our records, we received your request on October 8, 2018 and responded on October 9, 2018." Id. WMATA attached the October 9 email to its response. Id. The Firm then emailed Ms. Rice directly, requesting an update on the status of its PARP request. Ex. 5, Richardson Decl. at 4–5. Ms. Rice, in turn, explained in her

---

[1] According to a WMATA representative, on October 5, 2018, Ann had initiated a "notice of loss claim by calling April Rice . . . to report that her daughter was a passenger on a Metro Access vehicle that was involved in an accident on I-270." Hamilton Decl. [ECF No. 7-4] ¶ 3. It is this claim, apparently, to which WMATA's letter refers. Id. ¶ 4.

reply that "[y]our request for the investigative documents is being processed. Please be advised we do not release video footage. You are welcome to schedule an appointment to view the video at our office." Ex. 6, Richardson Decl. at 1. Over the course of October 2019, the Firm sent two more emails to Ms. Rice requesting updates on the status of its PARP request, and on December 6, 2019, Ms. Rice replied, apologizing for her late response and stating that "[t]he Office of Risk Management does not release documents on pending claims." Ex. 5, Richardson Decl. at 1–3.

On December 13, 2019, the Law Office of Deborah M. Golden ("Golden"), now representing the Firm, sent a letter to WMATA in an attempt to appeal the denial of the Firm's PARP request. See Ex. 7, Richardson Decl. at 1. WMATA responded on December 31, 2019, advising Golden that the request had been "directed to the Third-Party Claims Office for handling because it involved a matter currently pending before that office. [The] request was not opened or processed as a PARP request, and there is no PARP decision to appeal." Ex. 8, Richardson Decl. at 1.

The Firm then filed this lawsuit on January 21, 2020, contending that WMATA had "wrongly withheld documents responsive to [the Firm's] properly submitted request" in violation of PARP and seeking both a declaration that "the records sought by [the Firm] are subject to PARP" and an order requiring WMATA to disclose the records. Compl. [ECF No. 1] ¶ 19 & at 4. WMATA filed a motion for summary judgment on May 26, 2020, and the Firm filed a cross-motion for summary judgment on June 25, 2020. See Def.'s Mem. in Supp. of its Mot. for Summ. J. ("Def.'s Mot.") [ECF No. 7-1] at 1; Lapidus Law Firm's Opp'n to WMATA's Mot. for Summ. J. & Cross-Mot. for Summ. J. ("Pl.'s Mot.") [ECF No. 9] at 1. Those motions are now fully briefed and ripe for consideration.

**Legal Standard**

WMATA applies PARP "consistent with the federal Freedom of Information Act [("FOIA")]." Wash. Metro. Area Transit Auth., Public Access to Records Policy ("PARP") § 1.0 (2019).[2] Following WMATA's lead, other judges in this District have concluded that PARP should be "interpreted in accordance with[] the FOIA." ERG Transit Sys. (USA), Inc. v. Wash. Metro. Area Transit Auth., 593 F. Supp. 2d 249, 250 & n.2 (D.D.C. 2009); see also Brown v. Wash. Metro. Area Transit Auth., 2020 WL 806197, at *4 n.4 (D.D.C. Feb. 18, 2020).  This Court will do the same.

"FOIA cases typically and appropriately are decided on motions for summary judgment." Defs. of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009).  Summary judgment is appropriate when the pleadings and evidence demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is the agency's burden to prove that it has complied with its obligations under FOIA (or, in this case, PARP).  See U.S. Dep't of Justice v. Tax Analysts, 492 U.S. 136, 142 n.3 (1989).  To determine whether an agency has carried its burden, the district court may rely on agency affidavits and declarations that demonstrate the adequacy of the search for responsive records and the applicability of any claimed exemptions.  See Morley v. CIA, 508 F.3d 1108, 1116 (D.C. Cir. 2007).  "At all times courts must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure.'"  Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting U.S. Dep't of State v. Ray, 502 U.S. 164, 173 (1991)).

## Discussion

WMATA does not claim that it has actually searched for responsive documents, nor has it identified any applicable exemptions to disclosure of the requested documents.  Instead, WMATA

---

[2] PARP may be found at: http://www.wmata.com/about/records/public_docs/upload/PI-209-203_Public-20Access-20to-20Records_FINAL-2001-2017-202019.pdf.

argues that (1) the Firm did not submit a valid PARP request, so WMATA had no disclosure obligations; and (2) even if the Firm's PARP request were valid, judicial review is barred because the Firm did not timely appeal the denial of the request. The Court disagrees on both fronts.

### I.   The Firm Submitted a Valid PARP Request

As a baseline, for a PARP request to be valid, the requester must describe the records sought "in sufficient detail to enable WMATA to locate them with a reasonable amount of effort." PARP § 7.5. And where a request does not reasonably describe the records sought, WMATA cannot simply disregard the request. Instead, "the PARP Administrator shall contact the Requester to advise that the request is insufficient and to identify what additional description is needed." Id. (emphasis added). WMATA makes no argument that the Firm's request failed to reasonably describe the records sought relating to the October 1, 2018 accident, nor did a PARP Administrator contact the Firm to identify any additional information necessary to complete the request. The Firm's request, then, at least satisfies this baseline requirement.

In arguing that the Firm's request was invalid, WMATA relies on § 7.8, which requires a requester who is "a guardian of an individual determined by a Court to be incompetent" to establish:

> (1) the identity of the individual who is the subject of the requested record by stating the name, current address, date and place of birth of the individual;
> (2) the Requester's identity, by stating his/her name, current address, date and place of birth as required by section 7.6 of [PARP];
> (3) proof that the Requester is the guardian by providing a copy of a Court order establishing guardianship; and
> (4) a statement that the Requester is acting on behalf of the individual in making the request.

PARP § 7.8. In WMATA's view, the Firm's request did not satisfy the first three of these requirements, so "WMATA had no obligation to search, produce records, or respond." Def.'s Mot. at 4.

This argument is meritless.  As an initial matter, § 7.8 applies only if the <u>requester</u> is the "guardian of an individual determined by a Court to be incompetent."  But here, <u>the Firm</u> submitted the request for documents, not Ann Hendricks.  That much is clear from the Firm's October 8, 2018 letter, which stated that "this law firm" had been retained by the Hendrickses and went on to inform WMATA that "<u>we</u> hereby request" the records relating to the Metro Access accident.  Ex. 2, Richardson Decl. at 1 (emphasis added).  If there was any doubt that "we" referred to the Firm, not the Hendrickses, the last sentence of the letter cleared it up: "<u>We</u> have enclosed an Affidavit attesting to <u>our</u> representation of the above-named individual[s]."  <u>Id.</u> (emphasis added).[3]  The Firm is not a guardian of an incompetent individual.  And there is nothing barring a law firm from itself being a "requester," independent of its representation of a client: PARP defines a requester broadly as "<u>any</u> person or entity (including corporations, federal, state, local, or foreign governments)."  PARP § 4.8 (emphasis added).  Hence, § 7.8 is irrelevant, and the Firm's request was valid.

More importantly, even if the request were construed as coming from the Hendrickses rather than the Firm, the request would nevertheless still be valid.  WMATA presents what appear to be two interrelated arguments that § 7.8 applies here, both of them implausible.  First, WMATA argues that § 7.8 applies when a requester "mak[es] its request for documents <u>as a guardian</u>," by which WMATA presumably means when the requester makes a request for documents pertaining in any way to a ward.  <u>See</u> Def.'s Reply in Supp. of its Mot. for Summ. J. & Opp'n to Pl.'s Cross-Mot. ("Def.'s Reply") [ECF No. 11] at 3 (emphasis added).  Indeed, WMATA contends that "[t]he plain language of section 7.8 does not state that the required information should be submitted <u>only</u>

---

[3] The affidavit itself emphasizes the point, authorizing WMATA to provide to the Hendrickses' attorney "Lawrence S. Lapidus, Esquire, a member of the District of Columbia and Maryland Bars, any and all documents or copies thereof, video tapes[,] or other media <u>which he has requested or may request in the future</u>."  Ex. 2, Richardson Decl. at 2 (emphasis added).

if the request is for personal or confidential information." Id.  Although WMATA does not flesh out in detail what this view of § 7.8 would mean, the Court interprets WMATA as saying that there are three categories of records: (1) general records that any member of the public could obtain (if no exemption applies); (2) personal or confidential information that a requester can obtain only if she meets certain additional requirements; and (3) general records that are not personal or confidential, but that pertain in some way to a guardian's ward.  As to this third category, WMATA's position seems to be that, if a member of the public requests the records, she would have to satisfy only the § 7.5 requirement that the request be sufficiently detailed, but if the ward's guardian requests the records, she must satisfy the elevated § 7.8 standard.

   The Court is not persuaded.  To start, PARP's explicit and overriding purpose is to "make official public records, including electronic records, available to the public for inspection and copying to the greatest extent possible."  PARP § 1.  Given this purpose, the Court can see no reason why PARP would discriminate against guardians seeking general records in the way that WMATA seems to suggest.  Furthermore, WMATA's argument divorces § 7.8 from the surrounding provisions of PARP.  Section 7 of PARP (as relevant here) has a fairly simple structure.  It first lays out the basic requirements of a request, such as where the request must be sent.  See id. § 7.1–.4. It then explains how detailed a request need be.  See id. § 7.5.  Finally, it explains what procedures apply if a request is made for records containing "personal or confidential information," in increasing levels of detail.  See id. § 7.6–.8.  If a requester requests such information about herself, she must verify her identity, provide her full name and current address, and list her date and place of birth.  See id. § 7.6.  If a request is made for private records about another individual, the requester must provide WMATA with a written release signed by that other individual permitting disclosure.  See id. § 7.7.  And if a request is made for private

7

records about an individual for whom the requester is a guardian, the requester must provide the four categories of information already listed above. See id. § 7.8.

Section 7.8's location in this structure—immediately following two similar sections discussing the requirements for obtaining personal or confidential information—suggests that it, too, applies only to such private information, rather than to any and all records that might pertain to a guardian's ward. And what the structure suggests, the text confirms: included in § 7.8's requirements is a requirement that the requester establish his or her own identity by meeting the requirements of § 7.6. But § 7.6, which requires a requester to provide her name, current address, and date and place of birth, applies only when the requester is seeking personal or confidential records. See PARP § 7.6. Given these structural and textual clues, as well as the broad purpose of PARP, the Court concludes that § 7.8 applies only when a guardian is seeking personal or confidential records about her ward.

The second, related argument that WMATA appears to make is that § 7.8 applies whenever a guardian submits a request for records, even if those records are not related to the requester's status as a guardian or the requester's ward. See Def.'s Reply at 3 (arguing that "[i]f the Requester is a guardian, . . . the Requester must provide [the] four different categories of information" listed in § 7.8). This argument is a non-starter. Nothing in PARP suggests an intention to arbitrarily require members of the public who happen to be guardians to satisfy an elevated standard when that status is entirely irrelevant to the records sought. Indeed, § 7.8 requires the requester to establish "the identity of the individual who is the subject of the requested record." PARP § 7.8. This requirement would be superfluous or incomprehensible if § 7.8 applied when a guardian requested documents unrelated to any specific individual. As a result, this argument fails as well.

Here, the PARP request does not seek personal or confidential records about Mariam Hendricks. Instead, on its face, it seeks general records about the October 1, 2018 Metro Access van accident.[4]  See Ex. 2, Richardson Decl. at 1. As a result, even if the request is construed as having come from the Hendrickses, § 7.8's requirements are inapplicable, and the request remains valid.

## II. The Firm Did Not Fail to Exhaust its Administrative Remedies

WMATA's second argument is that its October 9, 2018 email served as a "denial" of the Firm's PARP request, so when the Firm failed to appeal that email within 30 days, it failed to exhaust its administrative remedies. Def.'s Mot. at 4–5. Under PARP, a requester cannot file suit unless she has "exhausted [her] administrative remedies." PARP §§ 9.2.1–.2.2. Therefore, WMATA contends, the Firm cannot now seek judicial review, even if its initial request had been valid. This argument is no more persuasive than the first.

PARP dictates that a denial decision "shall include," at a minimum, (1) "the reasons for the denial, citing the exemption(s) and explaining why it applies unless such explanation is otherwise prohibited"; (2) "the name and title or position of each person responsible for denial"; and (3) "the right to an internal administrative appeal under section 9.1 of this P/I and subsequent right to judicial review under section 9.2 and 9.3 of this P/I."  PARP § 7.9.2. The October 9, 2018 email that WMATA asserts constituted a denial did not satisfy any of these three requirements. Indeed, it is nearly impossible to read that email as a denial at all. In relevant part, the email informed the Firm that the "request for related records is being forwarded to [the Third Party Claims Office]" and that the Firm should "direct correspondence regarding this request to Ms.

---

[4] Of course, if upon WMATA's search for responsive records, even though the request does not on its face seek private records, it turns out that some of the records sought <u>do</u> contain personal or confidential information, or are otherwise exempt from disclosure, WMATA may—and should—indicate as much when denying the request as to those documents, as it is required to do under PARP § 7.9.2.

9

Rice." Ex. 3, Richardson Decl. at 1.  The email, thus, far from conclusively stating that the request had been denied, suggested that the request remained pending before the Third Party Claims Office.

Indeed, nearly a year after this "denial," on September 12, 2019, Ms. Rice informed the Firm that its request was still "being processed." Ex. 6, Richardson Decl. at 1.  WMATA contends, in the alternative, that even if the October 9, 2018 email did not constitute a denial, this September email "surely" served as at least a partial denial of the request, Def.'s Mot. at 4, because Ms. Rice stated "[p]lease be advised we do not release video footage," Ex. 6, Richardson Decl. at 1.  But the September email, too, does not satisfy the requirements for a denial decision under PARP § 7.9.2.

Ms. Rice's final email to the Firm, on December 6, 2019, stating that "[t]he Office of Risk Management does not release documents on pending claims," Ex. 5, Richardson Decl. at 1, likewise does not appear to meet the § 7.9.2 requirements.  But, under the circumstances, the Firm took it as a final decision and attempted to appeal on December 13, 2019.  See Ex. 7, Richardson Decl. at 1.  WMATA never issued a decision on that appeal, instead informing the Firm that the "request was not opened or processed as a PARP request, and there is no PARP decision to appeal." Ex. 8, Richardson Decl. at 1.  Under § 9.2.3, where WMATA "fails to issue a Decision on an administrative appeal within thirty (30) working days," a requester "shall be deemed to have exhausted his administrative remedies."  Because WMATA failed to issue a decision on the appeal, the Court concludes that the Firm properly exhausted its administrative remedies by the time it filed this suit on January 21, 2020, and judicial review is appropriate under § 9.2.1.

\*     \*     \*

For these reasons, the Firm's request was valid and judicial review is appropriate. But without further information from WMATA, the Court has no way to evaluate whether the requested records fall within an applicable exemption. The only basis that WMATA has provided to date for declining to produce the records sought by the Firm is that it "does not release documents on pending claims." Ex. 5, Richardson Decl. at 1. As the Firm correctly argues, see Pl.'s Mot. at 5–6, no such exemption exists in PARP, see PARP § 6. Nor is there a similar ground for withholding records under FOIA. See 5 U.S.C. § 552(b). Hence, the fact of a pending claim is not itself a valid reason to withhold responsive records. See Am. Immig. Laws. Ass'n v. Exec. Off. for Immigr. Rev., 830 F.3d 667, 677–79 (D.C. Cir. 2016) (noting that, under FOIA, agencies may withhold responsive records only if one of "nine statutory exemptions" applies).

The Court will therefore deny both motions for summary judgment without prejudice, because the current record is not sufficient to warrant summary judgment for either side. But the Court will require WMATA, by not later than September 22, 2020, to reconsider the Firm's PARP request and either produce the requested records or identify an applicable exemption in PARP permitting it to withhold the records. The parties will be required to file a joint status report by not later than October 1, 2020, informing the Court of the results of WMATA's reconsideration and whether any further proceedings will be necessary in this case. A separate order will be issued on this date.

/s/<br>
JOHN D. BATES<br>
United States District Judge

Dated: September 1, 2020